Hecker Fink LLP

NEW YORK | WASHINGTON, DC | LOS ANGELES

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

TEL (212) 763-0883 | FAX (212) 564-0883
WWW.HECKERFINK.COM

scrowley@heckerfink.com

August 28, 2026

**BY CM/ECF**

The Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *United States v. Spagnuolo*, 26 Cr. 278 (AT)

Dear Judge Torres:

We represent Michele Spagnuolo in the above-captioned matter and write to provide supplemental authority in support of Mr. Spagnuolo's motion to dismiss the Indictment. Dkt. No. 40 ("Mot."). Earlier today, the Ninth Circuit issued its opinion in *KalshiEX, LLC v. Assad*, No. 25-7516 (9th Cir. Aug. 28, 2026), which we attach as Exhibit A. The *Assad* decision rejected Kalshi's appeal from a District of Nevada decision dissolving a preliminary injunction that Kalshi had obtained to bar enforcement of Nevada's state gaming laws with respect to Kalshi's sports contracts in Nevada. Slip op. at 16–17.[1] The Ninth Circuit affirmed the District of Nevada's holding that Kalshi was unlikely to succeed on its argument that sporting event contracts are swaps, basing its decision on many of the same arguments that Mr. Spagnuolo raised in his motion to dismiss.

The Ninth Circuit adopted the same narrow construction of the statutory phrase "associated with" that Mr. Spagnuolo urges here. The court held that a referenced event "must be inherently associated with a potential financial [or economic] consequence, not just that the event or contingency have some potential downstream financial consequence." Slip op. at 32 (quoting *Hendrick*, 817 F. Supp. 3d at 1027–28). Reading the statute "so expansively as to include any conceivable downstream economic consequence would render the definition of swap so broad as to be meaningless." *Id.* at 32–33. The court likewise agreed that this narrow reading of the Commodity Exchange Act ("CEA") is confirmed by the balance of the statute's definition of "swap," which refers "almost exclusively to financial measures, indices, or instruments." *Id.* at 33. That reasoning forecloses the government's theory in this case, which depends entirely on attenuated, downstream consequences said to flow from the identity of Google's most-searched person of 2025. *See* Mot. at 17–22.

[1] That District of Nevada decision was the *KalshiEX, LLC v. Hendrick* decision that Mr. Spagnuolo cited throughout his motion to dismiss. *See* 817 F. Supp. 3d 1014 (D. Nev. 2025).

The court also confirmed that a "swap" must serve the risk-transfer function at the heart of the CEA, explaining that event contracts of this kind "do not help institutions or investors hedge against risk; they *create* risk, largely for ordinary consumers, where none previously existed." Slip op. at 28–29. The court also rejected Kalshi's broad reading of the CEA because it "lacks a limiting principle": Because § 2(e) makes it unlawful to enter into a swap off a designated contract market, a capacious definition would mean that "anyone who places an off-DCM sports bet that fits within § 1a(47)(A)(ii)'s definition of a swap would be violating the CEA." *Id.* at 30. Those are precisely the points made in Mr. Spagnuolo's motion to dismiss, *see* Mot. 18–19 and 24–25, and they apply with even greater force to wagers on curated, historical search-trend data.

Respectfully submitted,

Shawn G. Crowley
Michael Ferrara
Hecker Fink LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883
scrowley@heckerfink.com
mferrara@heckerfink.com

Counsel for Michele Spagnuolo

cc: AUSAs Thomas Burnett, Ryan Finkel, Allison Nichols