USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ________________
DATE FILED: 10/19/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-against-

MICHELE SPAGNUOLO,

Defendant.

26 Cr. 278 (AT)

**ORDER**

ANALISA TORRES, District Judge:

On May 27, 2026, Defendant, Michele Spagnuolo, was arrested pursuant to a warrant stemming from a criminal complaint alleging commodities fraud in violation of 7 U.S.C. §§ 9(1), 13(a)(5) and 17 C.F.R. § 180.1; wire fraud in violation of 18 U.S.C. §§ 1343, 3238; and money laundering in violation of 18 U.S.C. §§ 1956, 3238. *See* Compl., ECF No. 1; ECF No. 3 (minute entry for post-arrest bond hearing). Spagnuolo moves to suppress statements made during his post-arrest interrogation, as well as the fruits of those statements. *See* Mot., ECF No. 43; Mem., ECF No. 44; *see also* Opp., ECF No. 48; Reply, ECF No. 50. For the reasons stated below, Spagnuolo's motion is GRANTED IN PART; the Court determines that a suppression hearing is necessary to fully resolve the motion.

**BACKGROUND**

Spagnuolo is an Italian citizen who lives in Switzerland and works for the American technology company Google. *See* Mem. at 2; Opp. at 1. On May 22, 2026, Spagnuolo and his wife traveled to New York City for a vacation. Mem. at 2. At approximately 6:10 a.m. on May 27, 2026, agents from the Federal Bureau of Investigation ("FBI") arrested Spagnuolo at his Manhattan hotel pursuant to a warrant issued by the Honorable Sarah Netburn. Crowley Affirm, Ex. A ("Arrest Report"), ECF No. 45-1; Compl. at 7. At the hotel, "[FBI] agents seized Spagnuolo's phone, hard drives, and other belongings pursuant to a search warrant," Mem. at 2,

and provided Spagnuolo with a written notice, in Italian, of his *Miranda* rights, Arrest Report at 1.

FBI agents transported Spagnuolo to 26 Federal Plaza, where two agents interrogated him for approximately eighty minutes. Arrest Report at 1. At the outset of interrogation, an FBI agent confirmed Spagnuolo was comfortable proceeding in English and then verbally provided *Miranda* warnings again in English. Crowley Aff., Ex. B ("Video") at 3:45–4:34; Crowley Aff., Ex. C ("Transcript") at 2. Spagnuolo affirmed that he understood the *Miranda* warnings though he asked, "how [he would] know if [his] wife was able to get [him] a lawyer for now." Video at 4:34–5:04; Transcript at 2–3. For the next several minutes, Spagnuolo and the agents discussed the criminal process, and Spagnuolo repeatedly asked questions about the procedure for getting a lawyer. Video at 5:00–12:30. During this exchange, Spagnuolo made two statements that he contends invoked his right to counsel: (1) "I feel that since it is accusing me, I would like to have a lawyer for that," Transcript at 4; Video at 8:57–9:45; and (2) "it would just be, make me feel better if there's like a lawyer present," Transcript at 5; Video at 11:25–35. Following these statements, the agent told Spagnuolo that obtaining counsel "won't happen like now." Transcript at 5; Video at 11:36–40. After further back-and-forth about process, during which Spagnuolo stated that he "would like to see" evidence of the allegations against him, agents began questioning him about the offense. Transcript at 6; Video at 11:40–13:30. Spagnuolo argues that the Government relied on his statements during the interrogation to subpoena Google for additional evidence the following day. Mem. at 17–19.

## DISCUSSION

I. Legal Standard

The Fifth Amendment's prohibition against compelled self-incrimination guarantees that custodial interrogation "must cease until an attorney is present" if the defendant requests counsel. *Miranda v. Arizona*, 384 U.S. 436, 474 (1966). "[W]hen an accused has invoked his right to have counsel present during custodial interrogation, . . . he is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981). The invocation of the right "requires a *clear* assertion of the right to counsel," not an ambiguous reference such as, "[m]aybe I should talk to a lawyer." *United States v. Medunjanin*, 752 F.3d 576, 586–87 (2d Cir. 2014) (cleaned up). "Although a suspect need not speak with the discrimination of an Oxford don, he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States*, 512 U.S. 452, 459 (1994) (citation and internal quotation marks omitted).

Once a defendant unambiguously invokes his right to counsel, interrogation must cease. *Miranda*, 384 U.S. at 474. Interrogation includes both express questioning and "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). However, "[i]f, after receiving *Miranda* warnings and invoking the right to counsel, 'the accused himself initiates further communication, exchanges, or conversations with the police', those unsolicited statements are admissible." *United States v. Miller*, 116 F.3d 641, 680 (2d Cir. 1997)

(quoting *Edwards*, 451 U.S. at 484–85). Statements in response to questioning after a defendant invokes his right to counsel are admissible only if the defendant "(a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." *Id.* at 680 (quoting *Smith v. Illinois,* 469 U.S. 91, 95 (1984)). That waiver must be assessed under "the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue." *Edwards*, 451 U.S. at 486 n.9. "Reinitiation of dialogue by the defendant can be found where a defendant has 'evinced a willingness and a desire for a generalized discussion about the investigation,' as opposed to more discrete or 'routine' inquires 'such as a request for a drink of water or a request to use a telephone.'" *United States v. Rosenfeld*, No. 23 Cr. 65, 2023 WL 8471947, at *2 (S.D.N.Y. Dec. 7, 2023) (quoting *Oregon v. Bradshaw*, 462 U.S. 1039 (1983)).

## II. Application

Spagnuolo identifies two purported invocations of his right to counsel. *See* Mem. at 7; Reply at 41. The Court analyzes each in turn.

### A. First Purported Invocation

Minutes into the interrogation, Spagnuolo made the following statement:

> How, how does it work? I mean, I, uh, I am aware of the story of this because it was, I was actually looking into it, uh, also internally at my workplace. But I, like, uh, this is saying that I, I profited out of it? So, I, I mean, I, **I feel that since it is accusing me, I would like to have a lawyer for that**, but at the same, at the same time I am aware of the story. So, I mean, I can, I would love to see basically evidence of me doing any, anything about, like, the money laundering, for example, or, or things because I did not.

Transcript at 4 (emphasis added); *see also* Video at 8:57–9:44.

The FBI agents and Spagnuolo then spoke over each other. During the exchange, an agent acknowledged that Spagnuolo "said [he] would like to talk to a lawyer," and noted that Spagnuolo "can do that." Transcript at 4; Video at 9:52–56. A few moments later, Spagnuolo asked, "[i]s it possible to talk about, I don't know, maybe evidence or something like that?" Transcript at 4; Video at 10:08–12. The FBI agent replied, "[s]o we can, but, but you have to agree to talk about the evidence without your lawyer, without a lawyer present." Transcript at 5; Video at 10:08–20. The other FBI agent added, "We're happy to hear from you right now without your lawyer present." Transcript at 5; Video at 10:20–24.

At this point in the interrogation, "a reasonable officer under the circumstances 'would have understood only that [Spagnuolo] *might* be invoking the right to counsel,' which, as noted above, does 'not require the cessation of questioning.'" *United States v. Morris*, No. 24 Cr. 358, 2024 WL 4699712, at *2 (S.D.N.Y. Nov. 6, 2024) (quoting *Davis*, 512 U.S. at 459). Spagnuolo argues that commenting "I would like to have a lawyer" is clearer than similar statements found to be unambiguous invocations of the right to counsel in this Circuit. Mem. at 7–8; *see, e.g., Wood v. Ercole*, 644 F.3d 83, 91 (2d Cir. 2011) (holding that the statement "I think I should get a lawyer" clearly invoked the right to counsel); *United States v. Rosenfeld*, No. 23 Cr. 65, 2023 WL 8471947, at *6 (S.D.N.Y. Dec. 7, 2023) ("I think it's better if I take a lawyer" determined to be a proper invocation of the right to counsel); *United States v. Seppala*, No. 16 Cr. 436, 2017 WL 5633167, at *3 (S.D.N.Y. Nov. 22, 2017) (same with respect to a defendant's question "Do I have an opportunity to call an attorney?"). "Admittedly, if the Court knew only that [Spagnuolo] had uttered [the words 'I would like to have a lawyer'], and did not have the benefit of a

videorecording of the full interview, it might well have" found that Spagnuolo's statement constituted an unambiguous invocation. *Morris*, 2024 WL 4699712, at *2.

In context, however, Spagnuolo's statement "evidences . . . internal debate." *Wood*, 644 F.3d at 91. His reference to a lawyer was "tucked into a longer [remark]" equivocating about whether to proceed with the interrogation. *Morris*, 2024 WL 4699712, at *2; *see* Transcript at 4. Spagnuolo's "inflection and emphasis" further undermine the clarity of his purported invocation, *Wood*, 644 F.3d at 92, as he mentions interest in a lawyer with evident hesitation and then rushes to caveat his statement. *See* Video at 8:57–9:45 ("I mean, I, I feel that since it is accusing me, I would like to have a lawyer for that, *but at the same, at the same time* . . ."). It is well established that "vacillation" about whether to request a lawyer is not an invocation of the right to counsel. *Wood*, 644 F.3d at 91 n.6; *see, e.g., Diaz v. Senkowski*, 76 F.3d 61, 63 (2d Cir. 1996) (holding that the defendant did not clearly invoke his right to counsel when he said "I think I want a lawyer" but then asked "[d]o you think I need a lawyer?"); *United States v. Brathwaite*, No. 17 Cr. 45, 2018 WL 1787943, at *3 (E.D.N.Y. Mar. 27, 2018) (same when the defendant stated "I'd like to speak to an attorney . . . . I mean I'd like to get my own attorney, yeah," but added "we can continue"), *report and recommendation adopted*, No. 17 Cr. 45, 2018 WL 1785484 (E.D.N.Y. Apr. 13, 2018).

A reasonable officer in these circumstances would not have understood Spagnuolo's equivocal statement as an unambiguous request for counsel. *See Davis*, 512 U.S. at 459. Continuing the interrogation was, therefore, lawful.

B. Second Purported Invocation

Less than two minutes later, Spagnuolo made the second purported invocation during the following exchange:

> Agent: It's your decision. You can proceed for as long as you want and you can stop it at any time, but it's entirely up to you. You just have to tell us…
>
> Spagnuolo: Sorry, how does it work with lawyers? Let's say that, so, how long does it take to, uh, just have someone present so I can just talk with you? I mean, it, **it would just be, make me feel better if there's like a lawyer present and then I just, I'd like to just openly talk with you, cooperate with you.**
>
> Agent: OK. Yeah, it's just like, that won't happen like now. So like this, this part, you can elect to either proceed without the lawyer or not proceed at all. And that's your right as, as I've outlined a few times now, umm, you just need to choose one way or the other. You can stop at any time, like I said, but it's entirely your decision. If at a later time you want to meet with a lawyer and with us, you could do that later with the lawyer.
>
> Transcript at 5 (emphasis added); Video at 11:10–12:16.

Here, Spagnuolo unambiguously invoked his right to counsel. There is no material difference in clarity between the statement "I think I should get a lawyer," which is sufficient to invoke the right, and Spagnuolo's assertion that "it would . . . make me feel better if there's like a lawyer present." *See Wood*, 644 F.3d at 91; *Rosenfeld*, 2023 WL 8471947, at *6. "Absent special circumstances, a reasonable observer hearing" the phrase, "it would make feel better if we stayed home," would not think "that the speaker actually wanted to . . . go to a baseball game, or that the speaker was engaged in an internal debate rather than expressing a preference." *Wood*, 644 F.3d at 91. Moreover, Spagnuolo's "[lack of] prior experience being interrogated by law enforcement" strengthens the conclusion that this statement invoked the right to counsel. *United States v. Seppala*, No. 16 Cr. 436, 2017 WL 5633167, at *3 (S.D.N.Y. Nov. 22, 2017).

The words immediately following Spagnuolo's reference to a lawyer further establish that he was "express[ing] his desire to deal with the police only through counsel." *Edwards*, 451 U.S.

1039 (1983), "[t]he officer immediately terminated the conversation" once the right to counsel was invoked. *Id.* at 1042. Spagnuolo's subsequent statement that he would "like to see" evidence, therefore, is not analogous to the *Bradshaw* defendant's unprompted inquiry about an investigation. Transcript at 6; Video at 13:15–30; *Bradshaw*, 462 U.S. at 1046; *see also United States v. Oehne*, 698 F.3d 119, 124 (2d Cir. 2012) ("[E]ven assuming *arguendo* that [the defendant] did invoke his Fifth Amendment rights, he waived those rights by thereafter *spontaneously* discussing his offense conduct with the officers." (emphasis added)).

The Government cites *United States v. Figaro*, 568 F. Supp. 3d 459 (S.D.N.Y. 2021), and *United States v. Choudhry*, 24 F. Supp. 3d 273 (E.D.N.Y. 2014), *aff'd*, 649 F. App'x 60 (2d Cir. 2016), two cases which further elucidate the distinction between a waiver under *Bradshaw* and the police-initiated exchange in this case. In *Figaro*, the suspect invoked his right to an attorney at one location, and "agents did not have any further substantive conversations with [d]efendant" at that site. 568 F. Supp. 3d at 463. Later, "[d]uring transport and processing," the defendant waived his previously invoked right to counsel by "attempt[ing] to engage nearly every agent with whom he came into contact, repeatedly asking whom he could speak to about the charges against him." *Id.* at 463. In *Choudhry*, "[i]mmediately following the [d]efendant's invocation of his rights, the agents prepared to leave the interview room. For reasons only known to the [d]efendant, he then began to make spontaneous, unprovoked, and incriminating statements." 24 F. Supp. 3d at 280. Here, in contrast, law enforcement told Spagnuolo "that won't happen like now" after he invoked his right to counsel, thereby initiating the exchange that culminated in Spagnuolo mentioning wanting to see evidence and interrogation recommencing.

D. Effect on Admissibility

Because law enforcement violated *Edwards* by continuing to interrogate Spagnuolo after he invoked his right to counsel, his statements during the interrogation are inadmissible in the prosecution's case in chief. *See Edwards*, 451 U.S. at 485–86.[1]

The parties dispute whether physical evidence obtained based on Spagnuolo's statements during interrogation should be suppressed under the fruit of the poisonous tree doctrine. *See* Mem. 12–13; Opp. 57–58. Pursuant to this doctrine, courts suppress not only "the illegally obtained evidence itself," namely, Spagnuolo's statements during interrogation, but also "evidence that [is] the indirect product or 'fruit' of [the] unlawful police conduct." *Nix v. Williams*, 467 U.S. 431, 441 (1984). It is well-established that the fruit of the poisonous tree doctrine does not apply to the *Miranda* rule, and, therefore, courts do not "suppress[ ] nontestimonial physical evidence discovered as a consequence of unwarned statements that are voluntary and uncoerced." *United States v. McCoy*, 407 F. App'x 514, 516 (2d Cir. 2010) (summary order) (internal quotation marks omitted); *accord United States v. Sharma*, No. 18 Cr. 340, 2019 WL 3802223, at *8 (S.D.N.Y. Aug. 13, 2019). But neither the Second Circuit nor the Supreme Court has determined whether courts must suppress physical evidence discovered as a consequence of statements taken in violation of *Edwards*.[2]

---

[1] The Court shall address the admissibility of Spagnuolo's statements for impeachment, *see* Opp. at 57, following the suppression hearing.

[2] Although *Edwards*, like *Miranda*, is "judicially prescribed prophylaxis," *Maryland v. Shatzer*, 559 U.S. 98, 105 (2010), there is reason to believe that the fruit of the poisonous tree doctrine nonetheless applies. The Third Circuit has explicitly reserved judgment on whether physical evidence obtained pursuant to an *Edwards* violation must be suppressed. *United States v. Caesar*, 2 F.4th 160, 168 n.4 (3d Cir. 2021); *see also United States v. McCluskey*, Cr. No. 10-2734, 2013 WL 12330211, at *3–4 (D.N.M. June 14, 2013). "The merit of the *Edwards* decision lies in the clarity of its command and the certainty of its application." *Minnick v. Mississippi*, 498 U.S. 146, 151 (1990). When a defendant invokes their right to silence under *Miranda*, the police must cut off questioning but can resume questioning after the passage of a significant period of time and the provision of a fresh set of warnings. *Michigan v. Mosley*, 423 U.S. 96, 105 (1975). By contrast, *Edwards* demands that questioning cease until an attorney is present or unless there is a break in custody lasting at least fourteen days. *Shatzer*, 559 U.S. at 104, 110. As one district court has found:

"The Court shall not wade into these novel constitutional waters when there are factual disputes that may obviate the need for such a decision." *United States v. Wang*, No. 23 Cr. 118, 2024 WL 1251105, at *10 (S.D.N.Y. Mar. 22, 2024). The Government contends that, even if the fruits of *Edwards* violations are inadmissible, "independent source and inevitable discovery exceptions would apply" in this case. Opp. at 58 n. 9. The Court finds that a suppression hearing is necessary to determine whether the Government had an independent source for, or would have inevitably discovered, evidence obtained pursuant to subpoenas and document requests to Google following Spagnuolo's interrogation.

**CONCLUSION**

Accordingly, Spagnuolo's motion to suppress post-arrest statements and fruits thereof is GRANTED IN PART, insofar as Spagnuolo's statements following his invocation of the right to counsel are inadmissible in the prosecution's case in chief. The Court shall hold a suppression hearing regarding the fruits of the post-arrest statements on **October 29, 2026**, at **10:00 a.m.** in **Courtroom 15D** of the United States Courthouse, 500 Pearl St. New York, New York 10007. By **October 23, 2026**, at **9:00 a.m.,** the parties shall confer and jointly propose any redactions of this order for public filing. The status conference scheduled for November 9, 2026, is adjourned *sine die*.

---

> As a practical matter, once an arrestee has invoked the right to counsel, the police know that the interview is the last opportunity they will have to interrogate the arrestee without counsel. There is no incentive to cease questioning if the arrestee can be induced to make incriminating statements or to reveal information which leads to physical evidence that can be admitted in a subsequent criminal case. The fact that the statements themselves would not be admissible is not a sufficient remedy to protect the individual's right to be free from compelled self-incrimination.

*United States v. Gilkeson*, 431 F. Supp. 2d 270, 294 (N.D.N.Y. 2006). Applying this reasoning, the *Gilkeson* court suppressed evidence obtained from the defendant's computer as the fruits of an *Edwards* violation. *Id.* at 291–95.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 43.

SO ORDERED.

Dated: October 19, 2026
New York, New York

ANALISA TORRES
United States District Judge