Hecker Fink LLP

NEW YORK | WASHINGTON, DC | LOS ANGELES

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

TEL (212) 763-0883 | FAX (212) 564-0883
WWW.HECKERFINK.COM

scrowley@heckerfink.com

October 23, 2026

**BY CM/ECF**

The Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *United States v. Spagnuolo*, 26 Cr. 278 (AT)

Dear Judge Torres:

We represent Michele Spagnuolo in the above-captioned matter and write to request oral argument on Mr. Spagnuolo's motion to dismiss the Indictment, Dkt. 40, and to provide supplemental authority. In particular, two issues are sufficiently complex that we believe oral argument would aid the Court in reaching its decision. Specifically, we request oral argument on Mr. Spagnuolo's arguments that (1) the Indictment's commodities fraud count, Count One, should be dismissed because the Year in Search bets that form the basis of the Indictment are not swaps under the Commodity Exchange Act ("CEA"), and (2) the Indictment's wire fraud count, Count Two, should be dismissed because the Indictment fails to allege that Mr. Spagnuolo misappropriated property that is cognizable under 18 U.S.C. § 1343.[1] The government takes no position on this request for argument.

As the Court is aware, the former issue relates directly to an active area of disagreement among federal circuit courts, with the Sixth and Ninth Circuits taking the position that the definition of swaps in the CEA must be construed more narrowly and the Third Circuit taking a broader approach. Dkt. 50 at 4.[2] The case law on the issue of prediction markets and the CEA has continued to evolve since the parties' briefing on Mr. Spagnuolo's motion was completed. In addition, Judge Garnett held oral argument earlier this month in *United States v. Van Dyke*, No. 26

[1] Consistent with the Court's Individual Practice in Civil Cases III.K, we intend to have an associate from our team argue part of the motion, should the Court grant our request for argument.

[2] A petition for certiorari seeking review of the Third Circuit's decision has been filed. *See KalshiEX, LLC v. Flaherty*, No. 26-299 (Sept. 2, 2026). Gary Gensler, the former Chairman of the Commodity Futures Trading Commission ("CFTC") who worked with Congress to amend the CEA through the Dodd-Frank Act, filed an amicus brief in support of that petition taking the position—also advanced by Mr. Spagnuolo in his motion to dismiss—that the relevant definition of a swap is not limitless and reaches only "event contracts . . . that hedge risks in a manner similar to traditional swaps." Brief of Former CFTC Charmain Gary Gensler as *Amicus Curiae* in Support of Petitioners at 16, *KalshiEX, LLC v. Flaherty*, No. 26-299 (Oct. 8, 2026).

Cr. 156 (S.D.N.Y.), the other alleged prediction market insider-trading case pending in this district, and aspects of that oral argument bear on the resolution of Mr. Spagnuolo's motion.

For example, in its briefing in *Van Dyke*, as here, the government took the position that neither it nor the Court needs to define limits on the scope of the CEA as it applies to bets on prediction markets. *Compare* Dkt. 48 at 16 ("This Court is not being asked to define the limits of the CEA. . . . Spagnuolo's hypotheticals are for another day."), *with* Mem. of Law in Opp. 13, *Van Dyke* (Dkt. 25) ("Van Dyke's hypotheticals are cases for another day.").

At oral argument, Judge Garnett asked the government to address Mr. Van Dyke's argument that the government's position creates an "endlessly elastic bucket in which any situation can be fit and then every defendant has to address their particular transactions as a factual question at trial." Ex. A ("Van Dyke Tr.") at 30. In response, the government identified a potential limiting principle from a recent Northern District of Illinois opinion, *Coinbase Fin. Mkts., Inc. v. Raoul*, No. 26 Civ. 7363, 2026 WL 2969682 (N.D. Ill. Oct. 2, 2026). *See* Van Dyke Tr. at 31. The government described the opinion as "well-written and smart," and argued that it offered limiting principles on the scope of the CEA that are "faithful to the text of the statute." *Id.*

The *Raoul* court concluded that the phrase "associated with a potential financial, economic, or commercial consequence" in the CEA's relevant definition of a "swap," 7 U.S.C. § 1a(47)(A)(ii), could not be read literally because doing so would create an "unlimited" scope to the statute. 2026 WL 2969682 at *7. The court applied two limits on the definition. First, "[a]ny association, actual or potential [with a financial, economic, or commercial consequence], must be *concrete and articulable*." *Id.* at *8 (emphasis added). This requirement avoids the statute reaching only "[s]peculative associations" that are "too 'tenuous, remote, or peripheral.'" *Id.* (quoting *Chevron USA Inc. v. Plaquemines Parish*, 608 U.S. 1, 12 (2026)). Second, the requirement that the event be associated with a financial, economic, or commercial consequence implies "some significance and materiality." *Id.* "For a consequence to be financial, it must affect finances in a material way." *Id.*

The *Raoul* court applied these concreteness and materiality requirements and concluded that some prediction market contracts on sporting events satisfied both, but others did not. *See id.* ("[A] bet on what color sports drink is dumped on the coach's head after a Chicago Bears win is not associated with the requisite sort of consequences."). And the government endorsed the limiting principles identified in *Raoul* arguing to Judge Garnett that the bets at issue in *Van Dyke*—which concern U.S. military intervention in Venezuela—would satisfy them and thus qualify as swaps under the CEA. The government argued that its prosecution of Mr. Van Dyke was "not an edge case" because "there is going to be potential financial consequences with a military action to depose the leader of Venezuela." Tr. at 31.

Whatever its application in the context of sporting events and global geopolitics, *Raoul*'s limiting principles—which, again, the government cited approvingly—squarely place Mr. Spagnuolo's bets outside the scope of the CEA's definition of a swap. The government has never pointed to any concrete and articulable financial, economic, or commercial consequence from the Year in Search bets, and certainly not one that would materially affect finances, commerce, or the economy. As explained in Mr. Spagnuolo's reply brief, the government's only argument on economic consequence in its opposition was to point to the size of the global search business and

the "search engine optimization" industry (allegations that do not appear in the Indictment). Dkt. 50 at 16-17. But the government does not connect that industry to the Year in Search bets and never explains what utility betting on whether someone is the most trending searched person would have for someone in that industry. *Id.* The government's position in this case is exactly the "logic that 'everything is related to everything else'" that the *Raoul* court rejected. *See Raoul*, 2026 WL 29696852, at *8 (quoting *Cal. Div. of Labor Standards Enforcement v. Dillingham Const., N.A.*, 519 U.S. 316, 335 (1997) (Scalia, J., concurring)).

As Judge Garnett recently recognized in hearing oral argument on the motion to dismiss in *Van Dyke*, cases charging insider trading on prediction markets present novel questions of law, Van Dyke Tr. at 85, and Mr. Spagnuolo urges that these questions can and should be decided on a motion to dismiss. The government's limitless reading of the CEA and the wire fraud statute presents a serious risk of arbitrary enforcement that has already ensnared Mr. Spagnuolo. Even the CFTC has in recent days attempted to clarify the types of prediction market contracts that fall within the CEA's definition of a "swap"[3]—an implicit recognition that this statutory question is not at all clear, let alone defined with sufficient clarity to trigger criminal liability as due process demands.

Mr. Spagnuolo would welcome the opportunity to further address at oral argument whether the CEA and the wire fraud statute reach the prediction market bets at issue in this case.

Respectfully submitted,

Shawn G. Crowley
Michael Ferrara
Hecker Fink LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883
scrowley@heckerfink.com
mferrara@heckerfink.com

Counsel for Michele Spagnuolo

cc: AUSAs Thomas Burnett, Ryan Finkel, Allison Nichols

[3] *See* Further Definition of ''Swap''—Inclusions, 91 Fed. Reg. 66022, 66024-25, 66031 (Oct. 19, 2026), https://www.govinfo.gov/content/pkg/FR-2026-10-19/pdf/2026-21377.pdf (proposing rule that would amend the definition of a "swap" in the CFTC's regulations to include event contracts "based on sports-, politics-, cultural-, and weather- related events" in response to "interpretive uncertainty" and diverging federal court decisions); Further Definition of ''Swap'' to Exclude Casino-Style Gambling Products, 91 Fed. Reg. 65969 (Oct. 19, 2026), https://www.govinfo.gov/content/pkg/FR-2026-10-19/pdf/2026-21376.pdf.